1  Patrick R. Delahunty (SBN 257439)
   pdelahunty@delawllp.com
2  Micah D. Nash (SBN 246319)
3  mnash@delawllp.com
   DELAHUNTY & EDELMAN LLP
4  4 Embarcadero Center, Suite 1400
   San Francisco, CA 94111
5  Telephone: 415-891-6210
6  Facsimile: 415-891-6256
7
   Attorneys for Petitioner Nina Agdal
8

9            UNITED STATES DISTRICT COURT
10           NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *IN RE: SUBPOENA TO X CORP.*, Successor in Interest to *TWITTER, INC.* <br><br> Served in case: *Nina Agdal v. Dillon Danis,* D.N.J. 2:23-CV-16873-MCA-MAH | Misc. Case Number: 3:24-mc-80266 <br><br> **PETITIONER NINA AGDAL'S NOTICE OF MOTION AND MOTION TO COMPEL RESPONDENT X CORP. TO COMPLY WITH THIRD-PARTY SUBPOENA; MEMORANDUM IN SUPPORT** <br><br> Date: TBD <br> Time: TBD <br> Ctrm: TBD |

1

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES, RESPONDENT X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC., AND COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that, as soon as counsel may be heard before the assigned judge at the assigned time in the assigned department, Petitioner Nina Agdal ("Petitioner" or "Agdal"), will and hereby does move this Court for an Order compelling Respondent X Corp., successor in interest to Twitter, Inc. ("X"), to comply with Petitioner's subpoena originally served on X on February 23, 2024 (the "Subpoena"). This Motion to Compel is brought pursuant to Rules 26, 37 and 45 of the Federal Rules of Civil Procedure, and the applicable Local Rules of this Court, on the grounds that counsel for Petitioner and X met and conferred in good faith, pursuant to Civil Local Rule 37, but were unable to resolve X's First Amendment objection. Specifically, X indicates that it will not comply with the Subpoena seeking the subscriber information for a user account absent a Court Order directing compliance, stating that X must protect the interests of its accountholders to engage in anonymous speech and that a Court first must conduct a First Amendment analysis of the requested discovery, including whether Petitioner has satisfied the applicable standard regarding the qualified right to anonymous speech under the First Amendment to the United States Constitution. This Motion to Compel is based on this Notice of Motion and Motion, as well as the following Memorandum in Support, the accompanying Declaration of Joseph B. Shumofsky, Esq. ("Shumofsky Decl.") and all exhibits thereto, all cited authorities, all files and records in the underlying litigation currently pending in the U.S. District Court for the District of New Jersey, *Nina Agdal v. Dillon Danis*, Case No. 2:23-CV-16873-MCA-MAH, any additional matters as may be judicially noticed by the Court, and on the oral argument and any other evidence that may come before the Court prior to or during any hearing on this Motion to Compel.

## STATEMENT OF RELIEF REQUESTED

Pursuant to Rules 26, 37 and 45, Agdal respectfully requests an order requiring X to comply with the subpoena served on it in the underlying litigation, Case No. 2:23-CV-16873-MCA-MAH, pending in the District of New Jersey.

Dated: October 24, 2024

Respectfully submitted,

DELAHUNTY & EDELMAN LLP

By: s/*Micah Nash*
MICAH NASH, SBN 246319
mnash@delawllp.com
Attorneys for Petitioner Nina Agdal

## STATEMENT OF THE ISSUE TO BE DECIDED

Whether this Court should enforce Petitioner Agdal's subpoena to non-party X, which seeks limited and specific information about a single X user's identity that is critical to Agdal's claims in an underlying lawsuit pending in the U.S. District Court for the District of New Jersey, *Nina Agdal v. Dillon Danis*, Case No. 2:23-CV-16873-MCA-MAH (the "DNJ Lawsuit")

## MEMORANDUM OF POINTS AND AUTHORITIES

Petitioner Nina Agdal respectfully moves this Court to enforce its Subpoena to Respondent X Corp., which seeks the subscriber information of an X account that is relevant to Agdal's claims in the DNJ Lawsuit. Those claims arise from the conduct of Defendant Dillon Danis ("Danis"), who engaged in a relentless campaign of cyber harassment and bullying against Agdal. As part of that campaign, Danis posted to his X account certain personal content of Agdal that has been forensically traced to the hacking of Agdal's Snapchat account. Danis has claimed that he was not involved in and has no knowledge of any such hacking but that he received some of the hacked content from the anonymous X account @notamod921, which is at issue in this Motion. The subscriber information of @notamod921 is relevant to Agdal's claims and Danis's primary defense to those claims, which is that he did not act willfully, recklessly, or with malice in making the posts that give rise to Agdal's claims. For the reasons set forth herein, the First Amendment concerns X raises to justify withholding the requested subscriber information are inapplicable here, and even if the First Amendment *is* implicated, the Court still should grant this Motion and enforce the subpoena upon weighing the interests at stake because Agdal has made a *prima facie* showing of the merits of her claims.

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. The Harassment Campaign and the DNJ Lawsuit

In early August 2023, Danis started a campaign of cyber harassment against Agdal. Danis's harassment campaign was part of a feud with Agdal's fiancé, non-party Logan Paul, whom Danis was scheduled to face in a highly publicized boxing match several months later in October 2023. *See* Shumofsky Decl., Ex. A (Second Amended Complaint), ¶ 2. Danis carried out this campaign

primarily from his X account @dillondanis, where, for several months, he relentlessly posted hundreds of messages containing vulgar and disparaging pictures, memes, and comments about Agdal. *Id*. ¶ 3. His offensive posts generated significant publicity and have been viewed more than *five billion* times to date, causing Agdal – with whom he has never even met or communicated – to suffer serious emotional distress and reputational harm. *Id*. ¶ 4.

On September 6, 2023, while Danis's harassment campaign was ongoing, Agdal initiated the DNJ Lawsuit. Agdal's Second Amended Complaint asserts claims against Danis for (i) unlawful disclosure of an intimate image, in violation of the Violence Against Women Act Reauthorization ("VAWA"), 15 U.S.C. § 6851(b)(1)(A); (ii) invasion of privacy, in violation of N.J. Stat. § 2A:58D-1; (iii) defamation; and (iv) false light. *Id*. ¶¶ 63–106. Agdal's claims under VAWA and for invasion of privacy stem from Danis's conduct in repeatedly posting without authorization a sexually explicit photograph of Agdal that was taken and shared, without her consent, during a romantic encounter with a non-party (the "Explicit Photograph"). *Id*. ¶¶ 3, 30. Agdal's claims for defamation and false light are based on Danis's false post about Agdal's HIV status. For his defense, Danis alleges, in relevant part, that Agdal cannot prevail on her claims because she cannot establish that he acted willfully, recklessly, or with actual malice in carrying out his offending activities.

Also alleged in the Second Amended Complaint, and of particular relevance to this Motion, during the course of his harassment campaign, Danis also posted to his X account personal content of and belonging to Agdal – the origin of which has been forensically traced to the hacking of her Snapchat account. *See id*. ¶¶ 24–26; Shumofsky Decl., Ex. B (Declaration of Q. Bahler of Sourced Intelligence). Most notably, on August 28, 2023, Danis posted a video of Agdal in which she discussed her desire for intimacy during a period of celibacy (the "Video"). *See* Shumofsky Decl., Ex. A (Second Amended Complaint), ¶ 25. Agdal self-recorded the Video more than six years ago, never sent it to anyone, and stored it deep in her Snapchat archive. *Id*. ¶ 26. Since its posting in August 2023, the Video now has been viewed more than 135 million times. *Id*. ¶ 27.[1]

---

[1] While not specifically alleged in the Second Amended Complaint, on September 23, 2023, Danis posted another video of Agdal that she had self-recorded while lying in bed in lingerie, which similarly had been stored in her Snapchat archive and had never been shared with anyone (together with the Video, the "Hacked Content"). Shumofsky Decl., ¶ 6.

5

When Danis posted the Hacked Content was the first time Agdal became aware that her Snapchat account had been compromised. Danis has denied any involvement in or knowledge of the hacking of Agdal's account. In his discovery responses, Danis disclosed that he obtained the Video from another X account – @notamod921 – but denies knowing the identity of the individual(s) behind that account. *See* Shumofsky Decl., Ex. C (Danis' response to Interrogatory No. 6.). The @notamod921 account had posted the Video on August 27, 2023, the day before Danis posted it.[2]

Notwithstanding his claimed lack of knowledge about or involvement in the acquisition of the Video, Danis has a track record in the DNJ Lawsuit of failing to disclose the identities of individuals who helped him facilitate his harassment of Agdal. In his interrogatory answers, for example, Danis claimed that he acted alone in all respects, and that nobody else had contributed to his offensive posts. *See* Shumofsky Decl., Ex. C (Danis' response to Interrogatory No. 3). Subsequent discovery, including subpoenas to third parties, proved that representation was false, as Danis had solicited the assistance of several individuals to help him create distasteful content to post about Agdal. *See* Shumofsky Decl., ¶ 8. More recently, and for additional context, following extensive unsuccessful efforts to obtain document discovery from Danis, which included a hearing on an Order to Show Cause given Danis's repeated discovery violations, Danis represented for the first time that all of his text message communications from the relevant time period were supposedly no longer available because his cellular phone was damaged (well after this case was initiated, and after Agdal's document requests had already been pending for months). *See* Shumofsky Decl., Ex. D (court order dated 08/27/2024, ECF No. 68). Although Danis is being made to answer for his failure to preserve materials,[3] the bottom line is that party discovery in the DNJ Lawsuit is unlikely at this juncture to reveal Danis's ties, if any, to the @notamod921 account.

---

[2] *See* https://x.com/notamod921/status/1695929557260304571/video/1 (last visited August 23, 2024).

[3] The Court ordered Danis to sit for a special deposition focused on his discovery conduct and preservation efforts and the circumstances surrounding his allegedly damaged phone. That deposition recently took place on October 8, 2024. *See* Shumofsky Decl., ¶ 9. The Court also ordered Danis to turn over his allegedly damaged phone to his counsel. *See id.*, Exs. D (court order dated 08/27/2024, ECF No. 68), I (court order dated 10/02/2024, ECF No. 83). After a month-long period during which Danis (i) claimed to have lost the

### B. The Subpoena and X's Position

Upon Danis's disclosure of the @notamod921 account in early February 2024, Agdal served the Subpoena upon X on February 23, 2024.[4] *See* Shumofsky Decl., Ex. L (Affidavit of Service on Feb. 23, 2024). The Subpoena requests the production of, among other items, "All subscriber information, including the name, address, telephone number and any other contact information associated with the X account @notamod921." Shumofsky Decl., Ex. M (Subpoena). The Subpoena does not request content generated by the @notamod921 account nor communications sent or received from the account.

While the parties have conferred about the Subpoena at length and have seemingly resolved the majority of issues therein, with respect to the subscriber information for @notamod921, X has taken the position that, because the request seeks to unmask an anonymous user, First Amendment concerns are implicated. As a result, X has represented that it will not comply with that portion of the Subpoena unless and until Agdal obtains a Court order.[5] *See* Shumofsky Decl., Ex. O (email).

## II. LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure provides the framework for obtaining discovery from a third-party through issuance of a subpoena. Fed. R. Civ. P. 45(a)(1)(D). "[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b)." *Realtek Semiconductor Corp. v. LSI Corp.*, No. 5:14-mc-80197, 2014 U.S. Dist. LEXIS 123503, at

---

phone and (ii) proceeded to ignore several Court orders requiring him to update the Court about the status of his efforts to locate the phone, *id.* at Exs. E (letter from Danis's counsel dated 08/30/24, ECF No. 69), F (court order dated 09/03/2024, ECF No. 70), and J (court order dated 09/11/2024, ECF No. 73), Danis eventually announced he had found the phone and turned it over to his counsel, *id.* at Ex. K (letter from Danis's counsel dated 10/03/2024, ECF No. 84). Not surprisingly, Danis claimed he had found the phone only after the Court had ordered him to appear in person and explain himself. *Id.* at Ex. H (court order dated 09/23/2024, ECF No. 81), I (court order dated 10/01/2024, ECF No. 82). Agdal's counsel is in the process of obtaining the phone for forensic examination.

[4] In an abundance of caution, Agdal re-served the Subpoena upon X on July 2, 2024, based on a suggestion from X's counsel that X did not deem service of the Subpoena to be properly effectuated in the first instance, which Agdal disputes. *See* Shumofsky Decl., Ex. N (Affidavit of Service on July 2, 2024).

[5] This Motion focuses only on the request in the Subpoena for the @notamod921 account subscriber information but Agdal reserves the right to file a subsequent motion regarding other requests in the Subpoena, if necessary.

*2 (N.D. Cal. Sept. 3, 2014); *see also Gonzalez v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006). "[R]elevancy under Rule 26 is extremely broad." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 542 n.1 (9th Cir. 2020). It "is considerably broader than relevance for trial purposes." *Tomlinson v. United Behavioral Health*, No. 19-cv-06999, 2020 U.S. Dist. LEXIS 96717, at *10 (N.D. Cal. June 2, 2020).

"At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i); *see also* Fed. R. Civ. P. 26(b)(1) (indicating a court may compel a non-party to produce documents and information pursuant to a subpoena regarding any "non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *S. Cal. Hous. Rights Ctr. v. K3 Holdings, LLC*, No. 2:22-cv-00697, 2023 U.S. Dist. LEXIS 180866, at * 12 (C.D. Cal. Mar. 2, 2023) (finding discovery sought through subpoena was relevant and proportional to needs of the case). On a motion to compel compliance, the moving party is to "detail the basis for the party's contention that it is entitled to the requested discovery and show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied." N.D. Cal. Civ. LR. 37-2. The Court has discretion to determine whether to grant a motion to compel. *See Garrett v. City & Cnty. of San Francisco*, 818 F.2d 1515, 1519 (9th Cir. 1987). "When . . . '[t]he evidence sought by the subpoena [is] not plainly incompetent or irrelevant to any lawful purpose' it should [be] enforced." *EEOC v. Children's Hospital Medical Center*, 719 F.2d 1426, 1429 (9th Cir. 1983).

Finally, of relevance here, the Stored Communications Act ("SCA") permits service providers to disclose subscriber information. *See* 18 U.S.C. § 2702(c)(6) ("A provider described in subsection (a) may divulge a record or other information pertaining to a subscriber to or customer of such service . . . to any person other than a governmental entity."); *see also Obodai v. Indeed, Inc.*, No. 13-80027, 2013 U.S. Dist. LEXIS 39682, at *6 (N.D. Cal. March 21, 2013) ("The SCA permits service providers to divulge subscriber information 'to any person other than a governmental entity.' For that reason, a subpoena may be permissible if it seeks the identity of specific emails or accounts.").

## III. ARGUMENT

### A. The Court Should Enforce the Subpoena Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure

The Subpoena to X seeks the subscriber information of the X account @notamod921. This information is relevant to understanding the full scope of the harassment campaign underlying Agdal's claims in the DNJ Lawsuit, including the source of the content Danis posted about her. *See Trustlabs, Inc. v. Jaiyong An*, No. 21-cv-02606, 2023 U.S. Dist. LEXIS 214683, at *9-10 (N.D. Cal. June 26, 2023) ("[T]he full scope of the story as alleged in the [c]omplaint is relevant for discovery purposes, and just how much of that story makes it in at trial is for the district judge to decide."). It also is relevant to the intent elements of each of Agdal's claims, which are at issue in the DNJ Lawsuit. For example, in order for Agdal to prevail on her claims against Danis for violating VAWA and for invasion of privacy, she must show that Danis *knew or recklessly disregarded* that his disclosures of the Explicit Photograph were made without consent, and that he was not authorized to make the disclosures. *See* 15 U.S.C. § 6851(b)(1)(A); N.J. Stat. § 2A:58D-1. And in order to prove defamation, Agdal must show that Danis acted with *actual malice* in making his false posts about her.

But Danis disputes that he acted with the requisite intent for *any* of these claims. Danis's potential involvement in the hacking of Agdal's Snapchat account or his knowledge that he was posting hacked content at the time would be probative of his intent in posting about her, and could give rise to additional causes of action (*e.g.*, claims based on data theft or copyright infringement). The requested subscriber information would help test Danis's credibility in disclaiming any knowledge or involvement in the hacking, while also helping determine the source of the Hacked Content. *U.S. v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000) ("Evidence helpful in evaluating the credibility of a witness is of consequence to the determination of the action."); *U.S. v. Green*, 617 F.3d 233, 251 (3d Cir. 2010) ("[E]vidence concerning a witness's credibility is always relevant."). The subscriber information for the @notamod921 account – a necessary prerequisite to propound non-party discovery on the account holder – is particularly warranted here, because Agdal has no other source to obtain information about the acquisition of the Video or any relevant

communications between Danis and the account holder, considering Danis represented that his cellular phone is damaged or lost. *See Starr v. Lash*, No. 16CV2064-L, 2017 U.S. Dist. LEXIS 59959, at *8-9 (S.D. Cal. April 19, 2017) (declining to restrict discovery of the records of a nonparty subpoenaed by defendant, because the records were "essential to the fair resolution of the lawsuit, and [the party's] need thereof is compelling, as this information is unlikely to be available from any other source").

**B. The Court Should Reject X's First Amendment Objection to the Subpoena**

   **1. The Subscriber Information Sought in the Subpoena Is Not Protected by the First Amendment.**

Although X has declined to produce the subscriber information of @notamod921 on First Amendment grounds, the Ninth Circuit held that the First Amendment does not protect the subscriber information of an anonymous speaker. *See London v. Does*, 279 F. App'x 513, 514 (9th Cir. 2008). In *London*, the appellants "appeal[ed] the district court's denial of motions to quash a subpoena issued to Yahoo!, Inc. ('Yahoo!') to obtain information regarding five Yahoo! email accounts," including "the names, addresses, and telephone numbers provided by the users of the five email accounts." *Id.* at 514. The Ninth Circuit rejected the appellants' contention that the district court's decision violated any First Amendment rights, holding that "exposure of some identifying data does not violate the First Amendment [and] because a legal privilege was not implicated, the district court properly denied the motions to quash the subpoena." *Id.* at 515-16.

Consistent with *London*, a majority of district courts authorize subpoenas seeking subscriber information of an anonymous account, finding such subpoenas do not implicate First Amendment issues. *See, e.g.*, *United States v. Meta Platforms, Inc.*, No. 23-mc-80249, 2023 U.S. Dist. LEXIS 216533, at *19–20 (N.D. Cal. Dec. 5, 2023) (declining to find "the anonymous speakers are entitled to First Amendment protections," when the subpoena "d[id] not seek the contents of any communications associated with" the anonymous accounts and only requested "the names, birth dates, telephone numbers, email addresses, and IP addresses for the individual(s) who controlled" the accounts); *Smythe v. Doe*, No. CV 15-4801-R, 2015 U.S. Dist. LEXIS 187218, at *3 (C.D. Cal. Nov. 17, 2015) ("Basic subscriber information, the purpose of which is to identify potential

[d]efendants, is permissible discovery . . . . As such, the subpoenas are permissible for the narrow purpose of obtaining potentially identifying information regarding [d]efendants' identities from the third party."); *Chevron Corp. v. Donziger*, No. 12-mc-80237, 2013 U.S. Dist. LEXIS 119622, at *22, 25 (N.D. Cal. Aug. 22, 2013) (holding right to anonymous speech was not implicated by plaintiff's subpoenas that sought "identifying information" an anonymous email address owner because the "subpoenas d[id] not seek the content of any electronic communication").[6]

Here, as to the X account @notamod921, the Subpoena only seeks subscriber information and does not seek the content of any communication or speech. Furthermore, the underlying DNJ Lawsuit is not based on any anonymous speech. As such, the subscriber information sought by the Subpoena does not warrant First Amendment considerations.

### 2. Anonymous Speech That Is the Result of Data Theft or That Infringes Copyright Is Not Protected by the First Amendment.

Moreover, not only does the First Amendment not protect the requested subscriber information, it also does not protect anonymous speech that is the result of data theft or that infringes copyright. *See In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 882 (N.D. Cal. 2020); *Uber Techs., Inc. v. Doe*, No. 15-cv-00908, 2015 U.S. Dist. LEXIS 54915, at *8-9 (N.D. Cal. April 27, 2015) (holding that, while some anonymous-speech cases can directly implicate the First Amendment, at "the opposite end of the spectrum" are cases where the anonymous speaker "breached and stole data from [plaintiff's] secure database," and such "case (call it one of straightforward hacking and data theft) shares more in common with copyright-infringement suits than with true First Amendment, anonymous-speech cases"); *BWP Media USA, Inc. v.*

---

[6] A few courts suggest that subpoenas seeking to unmask an anonymous speaker may risk infringing First Amendment rights. *See, e.g.*, *In re DMCA §512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. June 21, 2022); *Smythe v. Does*, No. 15-mc-80292, 2016 U.S. Dist. LEXIS 1348, at *4–5 (N.D. Cal. Jan. 5, 2016). These cases are distinguishable from the case here because their underlying lawsuits were based on anonymous speech that arguably implicated First Amendment protection. *See DMCA §512(h) Subpoena to Twitter*, 608 F. Supp. 3d at 874 (involving copyright infringement claim based on certain photos posted by an anonymous account); *Smythe*, 2016 U.S. Dist. LEXIS 1348, at *2 (involving multiple tort claims based on two anonymous accounts' postings of plaintiff's personal information and allegedly defamatory comments). Here, the underlying DNJ Lawsuit is not based on any anonymous speech. Instead, it arises from non-anonymous speech, *i.e.*, the unlawful postings from Danis' X accounts.

*Crowdgather, Inc.*, No. CV 13-05318, 2014 U.S. Dist. LEXIS 191638, at *3 (C.D. Cal. July 28, 2014) ("[T]he First Amendment does not shield copyright infringement."); *Art of Living Found. v. Does*, No. C10-05022, 2011 U.S. Dist. LEXIS 88793, at *8 (N.D. Ca. Aug. 10, 2011) ("Parties may not use the First Amendment to infringe the intellectual property rights of others."). As such, the First Amendment does not protect from disclosure the identifying information of anonymous internet users who engage in data theft, *Uber Techs.*, 2015 U.S. Dist. LEXIS 54915, at *8–9, or "download or distribute copyrighted works without permission." *IO Group v. J.W.*, No. C-10-05821, 2011 U.S. Dist. LEXIS 9217, at *6 (N.D. Cal. Jan. 24, 2011); *see also BWP*, 2014 U.S. Dist. LEXIS 191638, at *3 ("[Copyright] infringer identities are not protected from disclosure by the First Amendment.").

Here, Agdal created the Video by herself and thus owns the copyright. *See* 17 U.S.C. 201(a) ("Copyright in a work protected under this title vests initially in the author or authors of the work."). Agdal also maintained the Video privately on her Snapchat account and never published nor consented to publication of the Video. Shumofsky Decl., Ex. P (Plaintiff's Decl., dated Sept. 5, 2023), ¶¶ 3–4. The Video was stolen from Agdal, and the posting of the Video on the @notamod921 account infringed Agdal's copyright, specifically her exclusive right "to reproduce the copyrighted work in copies or phonorecords." 17 U.S.C. 106(a). Accordingly, X has no basis to assert a First Amendment objection to the Subpoena's request for the subscriber information of the @notamod921 account, which is not protected by the First Amendment.

**C. Assuming *Arguendo* that First Amendment Concerns are Implicated Here, this Court Should Enforce the Subpoena for the Subscriber Information Because Petitioner Has Made a *Prima Facie* Showing of Her Claims and Balancing of Interests Requires Enforcement of the Subpoena.**

To the extent the Court finds the request in the Subpoena for subscriber information implicates First Amendment rights for anonymous speech and agrees with X that Agdal must make a *prima facie* showing of her claims, Agdal has made that showing and the balancing of interests requires enforcement of the Subpoena.

> [W]hen adjudicating a subpoena or other request for compelled disclosure that would reveal the identity of an anonymous speaker, a court should (1) notify the speaker and provide them with an

> opportunity to (anonymously) defend their anonymity; (2) require the party seeking disclosure to make a prima facie showing on the merits of their claim; and (3) balance the equities, weighing the potential harm to the party seeking disclosure against the speaker's interest in anonymity, in light of the strength of the underlying claim.

*DMCA § 512(H) Subpoena to Twitter*, 608 F. Supp. 3d at 876. An analysis of the three factors supports enforcement of the Subpoena.

### 1. Petitioner Has Made Reasonable Efforts to Notify the Account Holder

Agdal does not have the contact information for the individual(s) behind the X account @notamod921 to notify them, which is the very reason Agdal issued the Subpoena requesting the subscriber information. As such, it is X's responsibility to notify the account holder(s). *See Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1171 (Cal. Ct. App. 2008) ("[W]hen ISPs [Internet Service Providers] and message-board sponsors (such as [Twitter]) themselves notify the defendant that disclosure of his or her identity is sought, notification by the plaintiff should not be necessary."). Indeed, "X's policy is to notify users (*e.g.*, prior to disclosure of account information) of requests for their X . . . account information, including a copy of the request." https://help.x.com/en/rules-and-policies/x-law-enforcement-support#20 (last visited August 22, 2024). Prior to filing the Motion, Agdal also advised X that she would be filing the Motion and that X should notify the user of the account @notamod921 to the extent it has not done so already. *See* Shumofsky Decl. Ex. Q (email chain) p. 3. Thus, Agdal has made reasonable efforts to satisfy any notice requirement.

### 2. Petitioner Has Made *Prima Facie* Showing of Her Claims

To make a *prima facie* showing, Agdal must "persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff," by "adduc[ing] competent evidence of each fact that is essential to at least one of its causes of action." *OBI Pharma, Inc. v. Doe*, No. 16CV2218, 2017 U.S. Dist. LEXIS 64273, at *8–9 (S.D. Cal. April 27, 2017); *see also Smythe*, 2016 U.S. Dist. LEXIS 1348, at *7–8. Here, as set forth above, the subscriber information sought relates to Agdal's claims in the DNJ Lawsuit, including the counts for unlawful disclosure of an intimate image in violation of 15 U.S.C. § 6851(b)(1)(A) and for invasion of privacy in violation of N.J. Stat. § 2A:58D-1; defamation.

That relevant provision of VAWA provides:

> an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief .
> . . .

15 U.S.C. § 6851(b)(1)(A). The term "intimate visual depiction" includes "a visual depiction . . . that depicts . . . the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual." § 6851(a)(5)(A)(i).

Agdal has made a *prima facie* showing of all the elements of § 6851(b)(1)(A) with competent evidence.[7] First, the Explicit Photograph that Danis admittedly posted on August 11, 2023 from his X accounts was an "intimate visual depiction" within the meaning of the statute because it depicted the full frontal nudity of Agdal, a post-pubescent female.[8] Second, Danis' postings of the Explicit Photograph on X fall within the scope of "interstate or foreign commerce," because the X post was transmitted via the Internet.[9] Third, Danis disclosed the Explicit Photograph "without the consent" of Agdal. Fourth, Danis "kn[ew] . . . or recklessly disregard[ed]" Agdal's non-consent for the

---

[7] Agdal's Second Amended Complaint is verified under 28 U.S.C. § 1746. *See* Shumofsky Decl., Ex. A (Second Amended Complaint) at 15. Thus, Agdal's allegations of specific facts in the Second Amended Complaint qualify as evidence. *See Edwards v. Mora*, No. 20-cv-05138, 2022 U.S. Dist. LEXIS 156221, at *13 (N.D. Cal. Aug. 30, 2022) ("Statements of fact in [plaintiff's] [c]omplaint are considered as evidence."); *Scott v. Jackson County*, 297 F. App'x 623, 624–25 (9th Cir. 2008) ("A verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence and to which the affiant is competent to testify.").

[8] Upon request, if needed, Petitioner will provide the Court with a copy of the Explicit Photograph under seal or via other confidential method, for an in-camera review.

[9] *See, e.g.*, *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002) ("Transmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce."); *Doe v. Constant*, No. 24-554, 2024 U.S. Dist. LEXIS 130253, at *5 (W.D. La. July 23, 2024) ("[T]he e-mail(s) containing her intimate visual depictions originated in the United States, and . . . the recipients of these disclosures received such disclosures while in a foreign country. This international transfer falls clearly within the scope of interstate or foreign commerce.").

disclosure. When asked to identify any effort Danis made to determine Agdal's consent or the lack thereof, Danis identified none. Shumofsky Decl., Ex. C (Danis response to Interrogatory No. 7.) The lack of any such effort by Danis substantiates reckless disregard.[10]

A claim for invasion of privacy under N.J. Stat. § 2A:58D-1 – similar to a claim under 15 U.S.C. § 6851 – requires a plaintiff to establish that defendant (1) "reproduced" or "disclosed" (2) an image of plaintiff containing "exposed intimate parts", (3) "knowing that he is not licensed or privileged to do so", and (4) without consent and "under circumstances in which a reasonable person would not expect to be observed." *See* N.J. Stat. § 2A:58D-1(a)-(b); N.J. Stat. § 2C:14-9. For the same reasons discussed above with respect to Danis's violation of 15 U.S.C. § 6851, Agdal has made a *prima facie* showing on this claim, as well. As noted, the Explicit Photograph contained full frontal nudity of Agdal, and therefore included "exposed intimate parts" within the meaning of the statute. *See* N.J. Stat. 2C:14-1(e). By posting the Explicit Photograph on his X account, Danis "reproduced" and "disclosed" it within the meaning of the statute because he published, disseminated, shared, and made it available via the internet. *See* N.J. Stat. 2C:14-9. Finally, Danis reproduced and disclosed the photograph knowing that he did not have Agdal's consent to do so and that he was not otherwise "licensed or privileged" to do so.

Moreover, in the DNJ Lawsuit, the District Court issued a temporary restraining order against Danis, finding Agdal had established a likelihood of success on the merits for her claims under 15 U.S.C. § 6851(b)(1)(A) and N.J. Stat. § 2A:58D-1. Shumofsky Decl., Ex. R (TRO). This further confirms Agdal has made a *prima facie* showing for her claims. *See Garcia v. Holder*, 621

---

[10] *See, e.g.*, *Curcio v. Comm'r*, 689 F.3d 217, 224 (2d Cir. 2012) ("Disregard of rules or regulations is reckless 'if the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe.'"); *Frazier v. Vintage Stock, Inc.*, No. CIV-15-550-D, 2016 U.S. Dist. LEXIS 163529, at *19 (W.D. Okla. Nov. 28, 2016) ("Defendant acted with reckless disregard of its duties under the [statute]. Defendant makes no effort to justify its conduct based on a reasonable interpretation of the statute."); *United States v. Garcia*, 630 F. Supp. 142, 146 (S.D.N.Y. 1986) ("Inclusion of a hasty transcript of the call in [the affidavit] without any effort to ascertain its accuracy constituted reckless disregard for the truth.").

F.3d 906, 921 (9th Cir. 2010) ("A *prima facie* case is established when 'the evidence reveals a reasonable likelihood that the statutory requirements for relief have been satisfied.'").

### 3. Balancing of the Interests Between Disclosure of the Subscriber Information or Maintaining its Anonymity Requires Enforcement of the Subpoena

To the extent there are First Amendment interests at stake, a court should balance a plaintiff's interest in the disclosure requested against any constitutional burden that disclosure would impose. *See DMCA § 512(H) Subpoena to Twitter*, 608 F. Supp. 3d at 876. If "disclosing [an] identity would cause relatively little harm to [any] First Amendment and privacy rights, but is necessary to enable [a] plaintiff to protect against or remedy the serious wrongs, then the court should allow the disclosure." *OBI Pharma*, 2017 U.S. Dist. LEXIS 64273, at *9; *see also Smythe*, 2016 U.S. Dist. LEXIS 1348, at *7.

Here, disclosing the identity of the user of @notamod921 would cause little harm, if any, to the user's First Amendment or privacy rights. The First Amendment "right to anonymity is not absolute." *Smythe*, 2016 U.S. Dist. LEXIS 1348, at *5. "Where anonymous speech is alleged to be unlawful, the speaker's right to remain anonymous may give way to a plaintiff's need to discover the speaker's identity in order to pursue its claim." *Id*. The Video does not involve any privacy right of the @notamod921 user, considering the Video was created by Agdal and depicted Agdal. On the other hand, Agdal's privacy rights were violated by the unauthorized access to and public disclosure of the private Video. *See supra* Part III.C.2. Moreover, any public disclosure of the Video by @notamod921 constituted copyright infringement that warrants no protection by the First Amendment. *See supra* Part III.B.2. Therefore, @notamod921 has no First Amendment or privacy right in its disclosure of the Video.

Petitioner cannot learn the full extent of Danis' cyber harassment campaign against her without full discovery into the scope of his conduct. The subscriber information of @notamod921 would assist Petitioner in pursuing her claims, including helping her determine the source of the Video that Danis posted from his X account. *See supra* Part II.A. Considering Petitioner had privately maintained the Video in her Snapchat account, the request for the subscriber information

16

is part of her effort to discover who hacked her account—be it Danis, the user of @notamod921, or someone else—and pursue accountability in that regard, if warranted, with the information learned.

## IV. CONCLUSION

For the foregoing reasons, Petitioner Nina Agdal respectfully requests that the Motion to Compel be granted and that this Court issue an order compelling X to comply with the Subpoena and promptly produce the requested subscriber information of X account @notamod921.

Dated: October 24, 2024

Respectfully submitted,

DELAHUNTY & EDELMAN LLP

By: s/*Micah Nash*
MICAH NASH, SBN 246319
mnash@delawllp.com
Attorneys for Petitioner Nina Agdal