UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NINA AGDAL,<br><br>Plaintiff,<br><br>v.<br><br>DILLON DANIS,<br><br>Defendant. | Civil No. 23-16873-MCA-MAH<br><br>**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT** |

### RESPONSES TO INTERROGATORIES

**GENERAL OBJECTIONS:** (1) Defendant objects to these interrogatories to the extent they seek information protected by the attorney-client privilege and, therefore, has interpreted each interrogatory to be seeking non-privileged communications; (2) Defendant objects to Plaintiff's definition and use of the phrase "Explicit Photograph" to refer to the photograph Plaintiff posted on his X account on August 11, 2023, as referred to in Paragraphs 30-32 of the Amended Complaint and declines to adopt it.

1. Identify all social media accounts on which You have posted content relating to Plaintiff or caused such content to be posted.

**RESPONSE:**

Twitter, Instagram and Snapchat.

2. Explain why You started posting about Plaintiff on social media in or around August 2023, including posting and re-posting the Explicit Photograph of Plaintiff, as admitted in Paragraphs 30–31 of Your Answer.

**RESPONSE:**

To promote a fight with Logan Paul.

3.      To the extent such Person(s) exist, identify all Person(s) other than You who participated in contributing to the content of any posts about Plaintiff on any of Your social media accounts, and explain how they participated.

**RESPONSE:**

None.

4.      Identify all sources from which You either obtained content relating to Plaintiff or learned the location of such content.

**RESPONSE:**

Google searches on the Internet and Twitter searches/posts.

5.      Identify all Persons with whom You communicated about Your actual or contemplated social media posts about Plaintiff.

**RESPONSE:**

Andrew Tate and Adin Ross. I also gave interviews in connection with the Logan Paul fight. Given the number of interviews, I don't recall who interviewed me and do not have transcripts of the interviews to refresh my memory.

6.      Explain when and how You came into possession of each of the following:

**RESPONSE:**

    (a) The Explicit Photograph;

See General Objection (2). See response to Interrogatory No. 4. August 2023.

    (b) The video recording of Plaintiff referred to in Paragraph 25 of the Amended Complaint;

The video was posted on Twitter on August 27, 2023, by Miles (@notamod921).

   (c) The content of Plaintiff that You referred to in the post described in Paragraph 43 of the Amended Complaint; and

This was not content of Plaintiff. Otherwise, see above.

   (d) The content of Plaintiff that You referred to in the post described in Paragraph 45 of the Amended Complaint.

There was no such actual content.

  7. Prior to posting the Explicit Photograph, describe any efforts You made to determine whether Plaintiff consented to the disclosure of the Explicit Photograph.

**RESPONSE:**

Defendant objects to this interrogatory to the extent it suggests a legal obligation to investigate and to the extent it assumes that Plaintiff did not consent to the disclosure of the image. Assuming for purposes of this interrogatory that Plaintiff did not consent to the disclosure of the image, Defendant did not know that Plaintiff did not consent and had no reason to believe that Plaintiff had not consented to the disclosure of this image in light of the multitude of nude and semi-nude photographs of Plaintiff available on the internet, including such photographs posted by Plaintiff herself. See generally Answer ¶ 24; Aff. Def. G.

  8. Explain why You removed the Explicit Photograph from X, as admitted in Paragraph 32 of Your Answer.

**RESPONSE:**

See General Objection No. (2). The promoter of the Danis/Paul fight demanded that the post be deleted or Logan Paul would pull out of the fight.

  9. Identify all Persons to whom You have sent, shared, or shown each of the following:

**RESPONSE:**

(a) The Explicit Photograph;

See General Objection No. (2). The photograph was post on Twitter and available to anyone who had access to Twitter prior to its deletion.

(b) The video recording of Plaintiff referred to in Paragraph 25 of the Amended Complaint;

The video was posted on Twitter and available to anyone who had access to Twitter.

(c) The content of Plaintiff that You referred to in the post described in Paragraph 43 of the Amended Complaint; and

This was not content of Plaintiff. I may have shown the video to Andrew Tate.

(d) The content of Plaintiff that You referred to in the post described in Paragraph 45 of the Amended Complaint.

There was no such actual content.

10. Identify all Persons with whom You communicated about Plaintiff's HIV status.

None other than Twitter posts which, for the purposes of promoting the fight with Logan Paul, were posted for the purpose of parody, satire, farce, and comedy, and not intended to be taken seriously, as any reasonable person would recognize given the context (even if one found the language used to be offensive or distasteful).

11. At the time of the HIV Post, explain the understanding You had, if any, as to whether Plaintiff had HIV, and the basis for that understanding, including any efforts You made to determine whether Plaintiff had HIV.

**RESPONSE:**

See Response to Interrogatory No. 10. No reasonable person reading the posts would believe that I had actual knowledge of Plaintiff's HIV status or that the posts were anything other than parody, satire, farce, and comedy, and not intended to be taken seriously, given the context (even if one found the language used to be offensive or distasteful).

12.     Explain Your knowledge of or involvement in the hacking of or gaining unauthorized access to Plaintiff's email or social media accounts or electronic devices, including identifying every Person that You believe has knowledge of the hacking of or unauthorized access to any of Plaintiff's email or social media accounts or electronic devices, and the knowledge You believe they possess.

**RESPONSE:**

None.

13.     Identify all Persons involved in creating Your intended walk-out music for the Fight and any accompanying video montage You intended to play.

**RESPONSE:**

Just me.  There was no video montage.

14.     To the extent You earned ad revenue from any social media platform between August 2023 and October 2023, disclose the source(s) and amount(s) of such revenue.

**RESPONSE:**

Twitter.  Approximately $47,000.

15.     Disclose the total compensation You earned for the Fight.

**RESPONSE:**

$600,000.00

16. Explain the basis for Your assertion in Paragraph 53 of the Answer that the corresponding Paragraph of the Amended Complaint "misrepresents the actual substance of Defendant's statement."

**RESPONSE:**

The entire statement, read as a whole and in context, does not state that I was doing anything illegal.

17. List all appearances and/or interviews You have given in which You have discussed Plaintiff, and for each such appearance or interview provide:

**RESPONSE:**

Given the number of interviews I gave in connection with the promotion of the Logan Paul fight, I don't recall and do not have transcripts of the interviews to refresh my memory.

    (a) The name of the show or program on which You discussed Plaintiff;

    (b) The date of the appearance or interview; and

    (c) The name of the host or interviewer, if applicable.

18. With regard to Your Affirmative Defenses, identify the specific statements or posts that You assert were "statements of opinion or otherwise true," and describe the factual basis for those assertions.

**RESPONSE:**

All of my statements and posts are my own opinions. In addition, see response to paragraph 22 of my Answer.

19. Identify all occasions on which any of Your social media accounts were suspended, temporarily locked, or "shadow banned," between August 1, 2023 and the Fight, and for each such occasion provide:

    (a) The platform and account at issue;

    (b) The restriction that was imposed;

    (c) The date the restriction was imposed;

    (d) The duration of the restriction; and

    (e) The reason(s) provided for the restriction, if any.

**RESPONSE:**

Twitter on several occasions suspended, temporarily locked or "shadow banned" my account during the stated time frame. I do not have a list of occasions and no way to create a list of such occasions.

DocuSigned by:

*Dillon Danis* (signature)
740C43B6BF0445C...

Dillon Danis

Dated: February 8, 2024