UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NINA AGDAL,

          Plaintiff,

    v.

X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC.,

          Defendant.

Case No.  24-mc-80266-JCS

**ORDER GRANTING MOTION TO COMPEL**

Re: Dkt. No. 1

## I.      INTRODUCTION

Petitioner Nina Agdal brings a motion to Motion to Compel Respondent X Corp. to Comply with Third-Party Subpoena ("Motion") pursuant to Federal Rules of Civil Procedure 26, 37 and 45.  A hearing was held on January 8, 2025 and the parties submitted supplemental declarations following the hearing.  For the reasons stated below, the Motion is GRANTED.[1]

## II.     BACKGROUND

Agdal seeks to enforce a subpoena ("Subpoena") that was served on Defendant X Corporation ("X") on February 23, 2024 seeking "subscriber information, including the name, address, telephone number and any other contact information associated with the X account @notamod921." Shumofsky Decl., Ex. M (Subpoena). The Subpoena was issued in connection with a lawsuit pending in the United States District Court for the District of New Jersey ("the New Jersey Court"), *Agdal v. Dillon Danis*, Case No. 2:23-CV-16873-MCA-MAH (the "DNJ Action" or "the Underlying Action").

In the Underlying Action, Agdal alleges that defendant Dillon Danis conducted "a

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

campaign of cyber harassment" against her beginning in early August 2023, as "part of a feud with Agdal's fiancé, non-party Logan Paul, whom Danis was scheduled to face in a highly publicized boxing match several months later in October 2023." Motion at 4 (citing Shumofsky Decl., Ex. A (Second Amended Complaint, DNJ Action) ¶ 2). According to Agdal, Danis's "offensive posts generated significant publicity and have been viewed more than five billion times to date, causing Agdal – with whom he has never even met or communicated – to suffer serious emotional distress and reputational harm." *Id*. ¶ 4.

In the DNJ Action, Agdal asserts claims for (i) unlawful disclosure of an intimate image, in violation of the Violence Against Women Act Reauthorization ("VAWA"), 15 U.S.C. § 6851(b)(1)(A); (ii) invasion of privacy, in violation of N.J. Stat. § 2A:58D-1; (iii) defamation; and (iv) false light.  Shumofsky Decl., Ex. A (Second Amended Complaint, DNJ Action) ¶¶ 63–106. Agdal's claims under VAWA and for invasion of privacy are based on allegations that Danis repeatedly posted without authorization a sexually explicit photograph of Agdal that was taken and shared, without her consent, during a romantic encounter with a non-party (the "Explicit Photograph"). *Id*. ¶¶ 3, 30. Agdal's claims for defamation and false light are based on the allegation that Danis falsely posted about Agdal's HIV status. *Id.*  ¶¶ 58-59.

Agdal also alleges in the DNJ Action that as part of his harassment campaign, Danis posted a private video of her in which she "discussed her desire for intimacy during a period of celibacy" ("the Video").  *Id.* ¶ 25.  According to Agdal, she took the Video herself and stored it in her Snapchat archive and has never shared it with anyone.  *Id.* ¶ 26;  *see also* Shumofsky Decl., Ex. P (Agdal Decl.).   In her declaration, Agdal states that because she had never shared the Video, after Danis posted it to his X account, she hired a security consulting firm, Sourced Intelligence, to determine whether her Snapchat account had been hacked.  *Id.*  Sourced Intelligence investigated and concluded that Agdal's Snapchat account had, in fact, been hacked and that the Video, among other things, was likely obtained by the third-party hacker.  Shumofsky Decl., Ex. B (Bahler Decl. describing Sourced Intelligence investigation findings).

In the meantime, Danis stated in his interrogatory responses that he obtained the Video from another X account, @notamod921, where the Video was posted a day before Danis posted it.

1    Shumofsky Decl., Ex. C (Danis's response to Interrogatory No. 6.); *see also* Mays Decl. (dkt. no.

2    22) (stating that Agdal's counsel has accessed the post by @notamod921 and confirmed that the

3    Video was posted there the day before Danis posted it).  According to Agdal, Danis denies "any

4    involvement in or knowledge of the hacking of Agdal's account" and "denies knowing the identity

5    of the individual(s) behind" the @notamod921 account.  Motion at 6.  However, she questions his

6    credibility, pointing to evidence that Danis may have intentionally rendered inoperable the cell

7    phone used to make the offensive posts – allegations that are still being investigated but the New

8    Jersey court appears to take seriously – and that Danis has been untruthful in other interrogatory

9    responses.  *See* Motion at 6 (citing evidence).

10    In response to the Subpoena, X refused to produce the requested information, informing

11    Agdal's counsel that "as a matter of course" it requires parties seeking identifying information for

12    X accounts to obtain a court order, thus necessitating the instant Motion.  Shumofsky Decl., Ex. Q.

13    In the Motion, Agdal contends the First Amendment does not apply because she seeks

14    only identifying information and not the content of any messages or communications by the

15    @notamod921 account holder.  Motion at 10-11 (citing *London v. Does*, 279 F. App'x 513, 514

16    (9th Cir. 2008);  *United States v. Meta Platforms, Inc*., No. 23-mc-80249, 2023 U.S. Dist. LEXIS

17    216533, at *19–20 (N.D. Cal. Dec. 5, 2023); *Smythe v. Doe*, No. CV 15-4801-R, 2015 U.S. Dist.

18    LEXIS 187218, at *3 (C.D. Cal. Nov. 17, 2015); and *Chevron Corp. v. Donziger*, No. 12-mc-

19    80237, 2013 U.S. Dist. LEXIS 119622, at *22, 25 (N.D. Cal. Aug. 22, 2013)).

20    Agdal further contends the First Amendment does not provide any protection as to the

21    identity of the @notamod921 account holder because that individual's post of the Video was

22    illegal (because it was obtained by hacking her Snapchat account, likely by that account holder)

23    and violated Agdal's copyright to the Video.  *Id.* at 11-12 (citing *In re DMCA Subpoena to Reddit,*

24    *Inc*., 441 F. Supp. 3d 875, 882 (N.D. Cal. 2020); *Uber Techs., Inc. v. Doe*, No. 15-cv-00908, 2015

25    U.S. Dist. LEXIS 54915, at *8-9 (N.D. Cal. April 27, 2015); *BWP Media USA, Inc. v.*

26    *Crowdgather, Inc*., No. CV 13-05318, 2014 U.S. Dist. LEXIS 191638, at *3 (C.D. Cal. July 28,

27    2014); *Art of Living Found. v. Does*, No. C10-05022, 2011 U.S. Dist. LEXIS 88793, at *8 (N.D.

28    Ca. Aug. 10, 2011); and *IO Group v. J.W.*, No. C-10-05821, 2011 U.S. Dist. LEXIS 9217, at *6

United States District Court
Northern District of California

3

1    (N.D. Cal. Jan. 24, 2011)).

2    Finally, Agdal argues that even if a First Amendment review were appropriate – requiring

3    that she make a prima facie case as to her claims and show that her need for the information

4    outweighs any privacy interest of the account holder – she has satisfied that test.  Motion at 12-17.

5    In its Opposition, X rejects Agdal's argument that a First Amendment review is not

6    required.  Rather, it argues that a two-step First Amendment review must be conducted before it

7    can comply with the Subpoena and that this review must be conducted, in the first instance, by the

8    Court – even though X takes no position as to whether disclosure of the requested information

9    would be improper.  Opposition at 2-3, 8.

**III.    DISCUSSION**

**A.    Whether X Properly Refused to Comply With the Subpoena Because it is "Unclear" to X if Disclosure of Account Holder's Identity Violates the First Amendment**

13    As a preliminary matter, the Court rejects X's assertion that it is proper to refuse to comply

14    with a lawfully issued subpoena and to insist on a "First Amendment review" by the Court where

15    it does not have a good faith belief that the requested disclosures will actually violate the First

16    Amendment.  X is, in essence, requesting an advisory opinion to shield itself from potential

17    liability.  Under Article III of the U.S. Constitution, however, federal courts do not have

18    jurisdiction to issue advisory opinions.  *Carney v. Adams*, 592 U.S. 53, 58 (2020) ("The

19    Constitution grants Article III courts the power to decide 'Cases' or 'Controversies.' Art. III, § 2.

20    We have long understood that constitutional phrase to require that a case embody a genuine, live

21    dispute between adverse parties, thereby preventing the federal courts from issuing advisory

22    opinions."); *see also Lear Siegler, Inc., Energy Prods. Div. v. Lehman*, 842 F.2d 1102, 1126 (9th

23    Cir. 1988), opinion withdrawn in part on other grounds on reh'g, 893 F.2d 205 (9th Cir. 1989)

24    (rejecting government's argument that it properly refused to comply with statute in order to "test"

25    its constitutionality in court and observing that "one violates the law at one's peril; the desire to

26    raise even a good faith constitutional challenge confers no privilege to violate the law.").

27    X is emphatic in asserting that while a First Amendment review must be conducted before

28    it can comply with the Subpoena, it does *not* take the position that the two-part test is not satisfied

United States District Court
Northern District of California

4

under the facts here.  *See*  Opposition at 9 ("To be clear, X Corp. is not saying that it would be improper for the Court to find that a prima facie showing has been made in this context—X Corp. is stating that based on the information it has been presented from Petitioner, and against the significant concerns with unmasking anonymous speakers, it cannot make a determination that the first step has been satisfied), 10 ("For reasons similar to those above, X Corp. cannot determine that the balance of interests favors Petitioner, or that Petitioner has a compelling need under the circumstances known to X Corp.").  It contends its refusal to comply with the Subpoena is proper under these circumstances because "it is generally a judicial function to assess whether a party has made a prima facie showing[ ]" and  because "a Court is better positioned to assess these issues in light of all parties' obligation to not mislead the Court as to the facts or the law."  *Id.*  at 8. Neither justification for its conduct is persuasive, however.

As to the first justification, X points to the fact that a prima facie showing is closely related to admissibility determinations, which are made by the court.  *Id.*  But any determinations regarding admissibility of evidence obtained as a result of X's compliance with the Subpoena will be made by the New Jersey Court and not by this Court.  The undersigned has no doubt that the attorneys who have been litigating the DNJ Action are in a better position than this Court to assess what evidence may or may not be found to be admissible by that court.  As to X's suggestion that the Court should make the initial prima facie case determination, instead of X's attorneys, because Plaintiff's counsel is more likely to be truthful in its representations to the Court than to X, it has cited to no authority that supports it position, which is clearly inconsistent with the requirements of Article III with respect to standing.  Furthermore, there is no evidence that Plaintiff's counsel has engaged in any misrepresentations or improper conduct with respect to the Subpoena, as X acknowledges.  *Id.*  at 9 n. 2 ("X Corp. has no indications that Petitioner has engaged in any malfeasance with respect to seeking to unmask the user behind the @notamode921 account.") This argument is, therefore, entirely frivolous.

For these reasons, the Court finds that X's refusal to comply with the Subpoena based on its blanket policy with respect to disclosure of account holder identifying information is improper; having apparently failed to conclude under the facts of this case that compliance with the

Subpoena would violate the First Amendment, it should have produced the requested information.

**B.    Whether the Subpoena Should be Quashed on First Amendment Grounds**

**1.  Legal Standards**

The Supreme Court has recognized that the First Amendment provides protection for anonymous speech. *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (citing *Buckley v. American Constitutional Law Foundation, Inc*., 525 U.S. 182, 199–200 (1999); *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 341–342 (1995)).  This protection extends to online speech.  *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("Although the Internet is the latest platform for anonymous speech, online speech stands on the same footing as other speech—there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech.") (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997)).

In the Ninth Circuit, the general contours of First Amendment review in this context involve a two-step inquiry in which the court looks first to whether the party seeking to identify an anonymous speaker has made a prima facie case as to the claims asserted in the lawsuit for which the discovery is sought; and next (if that requirement is satisfied) balances the First Amendment interests of the anonymous speaker against the need for the party seeking discovery to obtain the speaker's identity in support of their claims.  *See In re DMCA § 512(h) Subpoena to Twitter, Inc*., 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022) ("[W]hen adjudicating a subpoena or other request for compelled disclosure that would reveal the identity of an anonymous speaker, a court should (1) notify the speaker and provide them with an opportunity to (anonymously) defend their anonymity; (2) require the party seeking disclosure to make a prima facie showing on the merits of their claim; and (3) balance the equities, weighing the potential harm to the party seeking disclosure against the speaker's interest in anonymity, in light of the strength of the underlying claim.").

The degree of protection to which anonymous speech is entitled, however, depends on the "nature of the speech[,]" which "should be a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes." *In re Anonymous Online*

United States District Court
Northern District of California

*Speakers*, 661 F.3d at 1177.  "[C]ourts afford political speech the highest level of protection[,]" whereas commercial speech is afforded "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values," *id*. (quoting *Bd. of Trustees of SUNY v. Fox*, 492 U.S. 469, 477 (1989)) and "some speech, such as fighting words and obscenity, is not protected by the First Amendment at all."  *Id*. (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942)).

Furthermore, some courts have applied a more stringent test when the anonymous speaker is a witness rather than a Doe defendant whose identity the plaintiff seeks to uncover in order to pursue their case.  For example, in *Doe v. 2TheMart.com Inc*., the court found that "non-party disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker[,]" reasoning that "[w]hen the anonymous Internet user is not a party to the case, the litigation can go forward without the disclosure of their identity." 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001). The court in *2TheMart.com* articulated four factors that courts should consider in determining whether this standard has been met, including whether:

> (1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source.

*Id*.  Courts that have applied the *2TheMart* test have concluded that these factors should not be treated as required elements but instead, should be weighed against each other in a more flexible approach.  *Rich v. Butowsky*, No. 20-MC-80081-DMR, 2020 WL 5910069, at *4 (N.D. Cal. Oct. 6, 2020) (citing *Sines v. Kessler*, No. 18-MC-80080-JCS, 2018 WL 3730434, at *13 (N.D. Cal. Aug. 6, 2018) (stating with respect to the *2The Mart* test, "this Court is of the view that, in the absence of binding authority on the subject, the more flexible approach of weighing factors based on the circumstances of a given case is preferable.").

Anonymous speech "is a developing area where the standards are far from settled."  *In re DMCA Subpoena to Reddit, Inc*., 441 F. Supp. 3d 875, 882 (N.D. Cal. 2020) (citing *In re*

*Anonymous Online Speakers*, 661 F.3d 1168, 1175-76 (9th Cir. 2011) (noting courts have "employed a variety of standards to benchmark whether an anonymous speaker's identity should be revealed")).  Thus, for example, where the anonymous speech at issue constitutes copyright infringement or relates to illegal activity, some courts have concluded that a First Amendment analysis can be dispensed with altogether while others have concluded that consideration of First Amendment concerns is still appropriate.  *See In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022) (conducting First Amendment review as to subpoena seeking identity of Twitter users alleged to have infringed plaintiff's copyright); *Art of Living Found. v. Does*, No. C10-05022 LHK HRL, 2011 WL 3501830, at *3 (N.D. Cal. Aug. 10, 2011), motion for relief from judgment granted sub nom. *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) (conducting First Amendment review as to subpoena seeking identity of bloggers who were alleged to have infringed the plaintiff's copyright); *but see In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 882 (N.D. Cal. 2020) (finding that magistrate judge erred in conducting First Amendment review as to subpoena seeking identity of anonymous Reddit poster alleged to have violated plaintiff's copyright and finding that "this was not really necessary" because  the "doctrine of fair use provides everything needed to balance the competing interests of the First Amendment and the copyright laws."); *Smythe v. Doe*, No. CV 15-4801-R, 2015 U.S. Dist. LEXIS 187218, at *3 (C.D. Cal. Nov. 17, 2015) (enforcing subpoena seeking subscriber information to identify individual who posted information about the plaintiff online without conducting First Amendment review on the basis that "[a]n assertion of anonymity for fear of being connected to potentially illegal action is unpersuasive.").

Likewise, some courts have found that no First Amendment review need be conducted where a subpoena seeks only basic subscriber information about an anonymous Internet speaker and compliance will not reveal any speech on the part of the account holder.  *See, e.g., Chevron Corp. v. Donziger*, No. 12-mc-80237, 2013 U.S. Dist. LEXIS 119622, at *22, 25 (N.D. Cal. Aug. 22, 2013) (holding right to anonymous speech was not implicated by plaintiff's subpoenas that sought "identifying information" of an anonymous email address owner because the "subpoenas

8

1    d[id] not seek the content of any electronic communication" or information establishing "a link

2    between the Doe movants' identities and particular statements made by them.").

3    **2. Discussion**

4         The Court finds that under the two-step First Amendment test discussed above, Agdal's

5    Subpoena should be enforced. Therefore, the Court need not decide whether Agdal is correct that

6    the Subpoena can be enforced without conducting a First Amendment review. In conducting its

7    review, the Court takes into account the fact that this case does not involve core political speech

8    but instead, speech that appears to infringe Agdal's copyright in the Video and to have been

9    associated with illegal hacking of Agdal's Snapchat account, suggesting the speech at issue is

10   entitled to only minimal First Amendment protection. The Court is also mindful, however, that the

11   individual associated with the @notamod921 account is not a defendant in this case and therefore,

12   the Court takes into account the factors articulated in *2The Mart* in applying the two-step First

13   Amendment test.[2]

14        a.  Notice to Account Holder

15        It is X's policy to give notice to account holders when their identifying information is

16   sought, *see* Motion at 13 (citing https://help.x.com/en/rulesand-policies/x-law-enforcement-

17   support#20 (last visited August 22, 2024), and it has supplied a declaration establishing that X

18   gave the @notamod921 account holder notice of the subpoena at the email address associated with

19   the account on April 29, 2024. Perla Decl. (dkt. no. 21). The account holder has not opposed the

20   Subpoena.

21        b.  Prima Facie Case Requirement

22        Next, the Court finds that Agdal has made a prima facie case to support at least two of her

23   claims in the Underlying action – her VAWA claim and her invasion of privacy claim under New

24   Jersey law. Under the VAWA,

25

26   ───────────────

27   [2] Agdal suggests in her briefs that the @notamod921 account owner might be named as a
     defendant, depending on what is learned about them as a result of the Subpoena. The Court places
     little weight on those statements, however, as Agdal apparently has not sued that individual as a
28   Doe defendant in any lawsuit and there is no evidence in the record that she intends to file such a
     lawsuit.

United States District Court
Northern District of California

1

> an individual whose intimate visual depiction is disclosed, in or
> affecting interstate or foreign commerce or using any means or
> facility of interstate or foreign commerce, without the consent of the
> individual, where such disclosure was made by a person who knows
> that, or recklessly disregards whether, the individual has not
> consented to such disclosure, may bring a civil action against that
> person in an appropriate district court of the United States for relief.

15 U.S.C. § 6851(b)(1)(A). An "intimate visual depiction" includes "a visual depiction . . .

that depicts . . . the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an

identifiable individual." 15 U.S.C. § 6851(a)(5)(A)(i). The allegations in Agdal's Second

Amended Complaint, which the Court treats as evidence because the complaint is verified under

28 U.S.C. § 1746, *see Edwards v. Mora*, No. 20-cv-05138, 2022 U.S. Dist. LEXIS 156221, *13

(N.D. Cal. Aug. 30, 2022), are sufficient to make a prima facie showing that Danis posted on his

X account a sexually explicit photograph of Agdal depicting "full frontal nudity" without Agdal's

consent. Shumofsky Decl., Ex. A (SAC) ¶¶ 29-33. Furthermore, "[t]ransmission of photographs

by means of the Internet is tantamount to moving photographs across state lines and thus

constitutes transportation in interstate commerce." *United States v. Runyan*, 290 F.3d 223, 239

(5th Cir. 2002). Thus, the interstate commerce requirement of VAWA is met. And Danis's

interrogatory responses in the DNJ Action make clear that he made no effort to determine whether

Agdal had consented to disclosure of the explicit photograph, *see* Shumofsky Decl., Ex. C

(Interrogatory responses), Response to Interrogatory 7. This is prima facie evidence that Danis

acted with reckless disregard of whether Agdal consent to his posting of the explicit photograph.

The elements of Agdal's invasion of privacy claim, asserted under N.J. Stat. § 2A:58D-1,

are similar to those of her VAWA claim. In particular, she must show that Danis: (1)

"reproduced" or "disclosed" (2) an image of plaintiff containing "exposed intimate parts", (3)

"knowing that he is not licensed or privileged to do so", and (4) without consent and "under

circumstances in which a reasonable person would not expect to be observed." *See* N.J. Stat. §

2A:58D-1(a)-(b); N.J. Stat. § 2C:14-9. Agdal has made a prima facie showing as to these elements

for the same reasons she has made a prima facie case as to her VAWA claim, as discussed above.

Finally, the Court notes that the New Jersey Court issued a temporary restraining order

against Danis, finding Agdal had established a likelihood of success on the merits for her VAWA

United States District Court
Northern District of California

10

1    and invasion of privacy claims, lending further support to the Court's conclusion that Agdal has

2    met the prima facie case requirement. Shumofsky Decl., Ex. R (TRO).

3                        c.   Balancing of Equities

4            Next, the Court must weigh Agdal's need for the information sought in the Subpoena

5    against the privacy interest of the account holder in maintaining their anonymity. In light of the

6    evidence in the record indicating that the @notamod921 account holder infringed Agdal's

7    copyright by posting the Video and may even have obtained the Video by hacking Agdal's

8    Snapchat account, their privacy interest is exceedingly limited.  *See* 17 U.S.C. § 201(a)

9    ("Copyright in a work protected under this title vests initially in the author or authors of the

10    work."). Under similar circumstances, courts have found that the First Amendment does not

11    protect against disclosure of identifying information.  *See Smythe v. Doe*, No. CV 15-4801-R,

12    2015 U.S. Dist. LEXIS 187218, at *3 (C.D. Cal. Nov. 17, 2015) (finding no First Amendment

13    protection as to identity of online account holder on the basis that "[a]n assertion of anonymity for

14    fear of being connected to potentially illegal action is unpersuasive."); *Uber Techs., Inc. v. Doe*,

15    No. 15-cv-00908, 2015 U.S. Dist. LEXIS 54915, at *8-9 (N.D. Cal. April 27, 2015) (observing

16    that while some anonymous-speech cases can directly implicate the First Amendment, at "the

17    opposite end of the spectrum" are cases where the anonymous speaker "breached and stole data

18    from [plaintiff's] secure database," and such "case (call it one of straightforward hacking and data

19    theft) shares more in common with copyright-infringement suits than with true First Amendment,

20    anonymous-speech cases"); *Art of Living Found. v. Does*, No. C10-05022, 2011 U.S. Dist. LEXIS

21    88793, at *8 (N.D. Ca. Aug. 10, 2011) ("Parties may not use the First Amendment to infringe the

22    intellectual property rights of others.").

23            On the other side of the equation is Agdal's need for the information sought in the

24    Subpoena.  In the DNJ Action, it will be Agdal's burden to show that Danis *knew* that he was

25    posting offensive or explicit content about her without her consent. Danis contends he did not

26    know that Agdal had not consented to the posting of the Video or the explicit photograph because

27    he was aware of other explicit photographs that Agdal had posted on the Internet herself.  *See* DNJ

28    Action, dkt. no. 61 (Answer to SAC) ¶ 24 ("Defendant did not know and had no reason to know

United States District Court
Northern District of California

that any specific nude or partially nude picture of Plaintiff was available without her consent"
because Agdal has posted other explicit photographs of herself on the Internet).   This is a "core"
defense to Agdal's claims in the DNJ Action.  However, Agdal's efforts to uncover information
about how Danis obtained the Video, which could undermine Danis's defense, are hampered by
the fact that the phone that Danis used when he posted photographs and videos of Agdal has
apparently been damaged such that Danis's text messages from the relevant period cannot be
obtained.  Thus, information linking Danis to the individual who hacked her Snapchat account and
obtained content that Danis later posted may well be critical to Agdal's case and may not be
available anywhere else.  Under these circumstances, Agdal has a compelling need for the
discovery that is sought under the Subpoena. For the same reasons, the Court finds that the
Subpoena was issued in good faith.  The Court further finds that Agdal's interest outweighs the
minimal First Amendment concerns implicated by disclosing the identity of the @notamod921
account holder.  Therefore, the equities favor the enforcement of the Subpoena.

## IV.    CONCLUSION

For the reasons stated above, the Motion is GRANTED.  X is ordered to comply with the
Subpoena by **January 28, 2025.**   By **February 11, 2025,** the parties shall file a joint status report
re compliance informing the Court whether any disputes remain related to X's compliance with
the Subpoena.

**IT IS SO ORDERED.**

Dated:  January 13, 2025

_____
JOSEPH C. SPERO
United States Magistrate Judge